UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DOUGLAS A. JENNINGS,

    Petitioner,

v.                                                Case No. 8:23-cv-951-WFJ-AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Douglas A. Jennings, a Florida prisoner, timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1; *see also* Doc. 3). Respondent filed a response opposing the petition. (Doc. 11). Mr. Jennings filed a reply. (Doc. 14). After careful review, the petition is **DENIED**.

**I.    Background**

From May 2010 to May 2015, Mr. Jennings shared a house in Sarasota, Florida with his girlfriend Sharon Young and her four children. (Doc. 11-2, Ex. 16, at 278-79, 294, 297). One of the children—M.B.—was eleven years old in the summer of 2013. (*Id.* at 135). One night that summer, Mr. Jennings entered M.B.'s bedroom, lay down next to her, and touched her buttocks and vagina. (*Id.* at 146-48). On another occasion, Mr. Jennings entered M.B.'s room, "pulled down his pants," and asked her whether she "wanted to play with something." (*Id.* at 149). Similar incidents happened "[a] lot" that summer. (*Id.* at

1

149-50). M.B. did not disclose the abuse at the time because she was "scared" and Mr. Jennings had instructed her "not to tell [her] mom." (*Id.* at 151).

The abuse came to light almost two years later, on May 1, 2015. (*Id.* at 287-88). M.B.'s grades had "started to come down a lot," and her mother had urged her to "figure out how she could fix them." (*Id.* at 283-84). That day, while M.B. was in school, she sent her mother a text message "explaining why her grades were bad." (*Id.* at 285, 288). The text listed several "[p]roblems" in M.B.'s life, including "stepdad molested me." (*Id.* at 288). After receiving this text, M.B.'s mother left work early to pick her daughter up at school. (*Id.* at 292). During the ensuing conversation, M.B. told her mother that on one occasion, Mr. Jennings "had gotten into bed with her and put his hands in her pants," and that on another occasion, he had "come into her room[,] pulled down his pants[,] and exposed himself and kind of wagged his penis at her." (*Id.* at 294). M.B. subsequently provided a similar description of the abuse during a forensic interview with a member of the Sarasota County Child Protection Team. (*Id.* at 216-38).

Although Mr. Jennings was tried only for his molestation of M.B., the jury also heard about his sexual abuse of C.B., M.B.'s older sister. C.B. was fourteen years old in the summer of 2013. (*Id.* at 199). One evening, Mr. Jennings drunkenly entered C.B.'s bedroom, began giving her a "back massage," and "undid [her] bra." (*Id.* at 201). During the "massage," Mr. Jennings "squeezed" C.B.'s buttocks. (*Id.*) The next morning, Mr. Jennings came back "crying" and said he "sometimes . . . forg[ot] his place." (*Id.*) On another occasion, Mr. Jennings entered C.B.'s room, lay next to her on the bed, and said he "had a crush on [her] and that [she] wasn't allowed to tell [her] mom that." (*Id.*)

During a subsequent interview with law enforcement, Mr. Jennings denied any inappropriate touching of M.B. (*Id.* at 357-58). He also said he could not recall "touching [C.B.] on the butt." (*Id.* at 356). He admitted, however, that he had unhooked C.B.'s bra while "rubbing her back." (*Id.*)

The jury found Mr. Jennings guilty of lewd or lascivious molestation of a child under twelve years of age. (*Id.*, Ex. 17). The trial court sentenced him to thirty years in prison. (*Id.*, Ex. 22, at 21). Following an unsuccessful direct appeal, *Jennings v. State*, 241 So. 3d 777 (Fla. 2d DCA 2017), Mr. Jennings moved for postconviction relief under Florida Rule of Criminal Procedure 3.850, (Doc. 11-2, Exs. 36, 39). The postconviction court denied relief, and the appellate court affirmed. (Doc. 11-2, Exs. 41, 45, 51). This federal habeas petition followed. (Doc. 1).

## II.   Standards of Review

### A.   AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

3

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed Mr. Jennings's conviction, as well as the denial of postconviction relief, without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a

4

state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

### B. Exhaustion of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).

5

A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

      **C.**      **Ineffective Assistance of Counsel**

Mr. Jennings alleges ineffective assistance of trial counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Mr. Jennings must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Mr. Jennings must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at

6

105 (internal quotation and citations omitted); *see also Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is doubly deferential."). "The question [on federal habeas review of an ineffective-assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

### III. Discussion

#### A. Ground One—Exclusion of M.B.'s "Handwritten Cards" to Mr. Jennings

Mr. Jennings contends that the trial court violated his constitutional rights by excluding "handwritten cards . . . written to [him] by M.B." (Doc. 1 at 11-12). M.B. wrote the cards in "mid-March 2015"—approximately two months before she told her mother that Mr. Jennings had sexually abused her during the summer of 2013. (*Id.* at 12). M.B. signed one card as "your favorite" and included a hand-drawn heart. (Doc. 11-2, Ex. 57, at 874). This card read, "To: Chef Wizard. . . . Happy Doug Day! I love you the most because . . . well, do you see any other card?" (*Id.* at 874-75). Another card said, "Happy Doug Day[.] I don't usually make cards for muggles, but it seemed legit today." (*Id.* at 873). And in a third card, M.B. wrote, "Happy Doug Day. . . . I hope you like you[r] presents[.] Sincerely, your favorite." (*Id.* at 876). According to Mr. Jennings, the cards "convey[ed] .

7

. . . affection toward [him] less than 60 days before M.B." accused him of sexual abuse. (Doc. 1 at 13). Thus, in Mr. Jennings's view, the cards showed that M.B.'s accusations "were just recent fabrications." (*Id.* at 14).

The prosecution sought to preclude Mr. Jennings from introducing the cards as "extrinsic evidence." (Doc. 11-2, Ex. 16, at 14-15). The trial court excluded the physical copies of the cards but allowed Mr. Jennings to cross-examine M.B. about their contents. (*Id.* at 194). For example, M.B. admitted on cross-examination that "60 days prior to . . . making this accusation," she wrote Mr. Jennings a card saying "I'm your favorite" and "Happy Doug Day, I love you the most." (*Id.* at 173-74). M.B. also conceded that she wrote Mr. Jennings another card saying "I hope you like your presents, I love you, sincerely, your favorite." (*Id.* at 176). Through cross-examination, the jury heard the contents of each card that M.B. wrote to Mr. Jennings in March 2015. (*Id.* at 173-76). Because of the court's ruling, however, the jury did not see the cards themselves. (*Id.* at 194).

Mr. Jennings now contends that the exclusion of the "physical cards" violated his rights to due process and to present a complete defense. (Doc. 1 at 14-15). He argues that the cards themselves "would have had a material visual impact with the jury," thus undermining "the credibility of the State's only actual witness" by showing that M.B. displayed affection for him "less than 60 days before" accusing him of sexual abuse. (*Id.* at 13-14). Respondent asserts that this claim is unexhausted and procedurally defaulted. (Doc. 11 at 6-8). The Court need not reach that issue because the claim fails on the merits. *See Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020) ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event.").

8

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). But the right to a meaningful opportunity to present a complete defense is "subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). And "if the court permits a defendant to present the essence of his desired argument to the jury, his right to present a complete defense has not been prejudiced." *United States v. Lewis*, 40 F.4th 1229, 1246 (11th Cir. 2022). "Nor does [a trial court's] exclusion of cumulative evidence violate the right to present a complete defense." *United States v. Ahmed*, 73 F.4th 1363, 1380 (11th Cir. 2023).

The exclusion of the handwritten cards did not violate Mr. Jennings's right to present a complete defense. The jury did not see the cards themselves, but M.B. admitted on cross-examination to authoring each card, and the jury heard what M.B. had written to Mr. Jennings. (Doc. 11-2, Ex. 16, at 173-76, 194). Indeed, M.B. even conceded that she had included a hand-drawn "heart" on one of the cards. (*Id.* at 174). Based on this testimony, defense counsel argued in closing that "six weeks prior" to accusing Mr. Jennings of sexual abuse, M.B. had written "letters" saying "I love you the most, you're the coolest, you're the Chef Wizard." (*Id.* at 430). Because the court allowed Mr. Jennings to present "the essence of his desired argument to the jury," the exclusion of the cards did not violate his right to present a complete defense. *Lewis*, 40 F.4th at 1246; *see also United States v. Nunez*, 1 F.4th 976, 992 (11th Cir. 2021) ("[T]he district court allowed

9

[defendants] to place the key facts before the jury, so it did not violate [their] right to defend themselves.").

### B. Ground Two, Sub-Claim A—Prosecutorial Misconduct

Mr. Jennings contends that several instances of alleged prosecutorial misconduct violated his federal constitutional right to a "fair trial." (Doc. 1 at 16-20). He complains, for example, that the prosecution "failed to comply with a court order to exclude any mention that [he] had stated he had a 'crush' on C.B. because it denoted a non-sexual event." (*Id.* at 17).

Respondent correctly contends that Mr. Jennings failed to exhaust this claim. (Doc. 11 at 11). Proper exhaustion requires a petitioner to "make the state court aware that the claims asserted present federal constitutional issues." *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007). "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). A petitioner must do more, however, than "scatter some makeshift needles in the haystack of the state court record." *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005). Moreover, a petitioner "does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief" to find the "federal claim." *Baldwin*, 541 U.S. at 32.

Mr. Jennings failed to squarely present his federal constitutional claim on direct appeal. In his initial brief, he argued that "the prosecutor committed several acts of

10

misconduct, which, taken in their cumulative effect, prejudiced [his] right to a fair trial." (Doc. 11-2, Ex. 29, at 19-20). But he never asserted a violation of his *federal* right to a fair trial. As the Eleventh Circuit has explained, the bare assertion that a defendant "was denied due process and a fair trial" is "insufficient to present" a federal claim because "this language could just be asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause." *Zeigler v. Crosby*, 345 F.3d 1300, 1308 n.5 (11th Cir. 2003); *see also Williams v. Sec'y, Dep't of Corr.*, No. 8:12-cv-973-JDW-TGW, 2015 WL 4040521, at *7 (M.D. Fla. June 25, 2015) ("Petitioner's cursory and vague statement in his Initial Brief that 'the State clearly violated the defendant's right to a fair trial'. . . [was] insufficient to present fairly to the state appellate court a federal constitutional issue."). Moreover, Mr. Jennings relied entirely on Florida caselaw in arguing that prosecutorial misconduct required reversal. (Doc. 11-2, Ex. 29, at 20-30). "Under these circumstances, [Mr. Jennings] cannot be said to have fairly apprised the state court of his federal . . . claim." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 459 (11th Cir. 2015).

Mr. Jennings cannot return to state court to present his unexhausted claim in a second, untimely direct appeal. *See* Fla. R. App. P. 9.140(b)(3) (stating that a notice of appeal must be filed within thirty days of the rendition of a sentence). As a result, this claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138 ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."). And because Mr. Jennings has not shown

that an exception applies to overcome the default, his claim of prosecutorial misconduct is barred from federal habeas review.

      C.      **Ground Two, Sub-Claim B—Failure to Object to Allegedly Improper Remarks During Closing Argument**

Mr. Jennings faults trial counsel for failing to "object to . . . improper closing arguments made by the prosecutor." (Doc. 1 at 16). He identifies the following allegedly improper remarks from the prosecutor's closing argument: (1) "[I]t's expected and it's no big surprise that you would have [a] disclosure by a child [of sexual abuse] that happened a few years ago"; (2) "Of course he touched her and she didn't want it"; (3) "This little girl deserves justice"; and (4) M.B. was in a "nightmare from which she doesn't get to wake up ever for the rest of her life." (*Id.* at 19-20; Doc. 3 at 10). According to Mr. Jennings, counsel was ineffective for failing to object to these remarks. (Doc. 1 at 16).

The postconviction court rejected this claim. It began with the prosecutor's statement that "it was 'expected' and 'no big surprise' that a child victim would make a disclosure years after the crime." (Doc. 11-2, Ex. 41, at 4). The court rejected Mr. Jennings's argument that this statement improperly "vouched for M.B.'s credibility." (*Id.*) According to the court, the challenged statement "was an explanation for the lack of physical forensic evidence in the case," and it was "supported by M.B.'s testimony that she tried to keep the abuse secret because she was scared and confused, and [Mr. Jennings] told her not to tell her mother." (*Id.*) Thus, the remark did not qualify as "[i]mproper vouching" because it did not "suggest[] reasons to believe a witness that were not presented to the jury or otherwise implicitly refer[] to information outside the record." (*Id.*) As for the

12

statement, "Of course he touched her and she didn't want it," the court noted that (1) it "was also supported by the direct testimony of M.B," and (2) the prosecutor was attempting to explain "that although [Mr. Jennings] also committed certain lesser-included offenses, the jury must convict on the charged crime if they found him guilty." (*Id.* at 4-5). Thus, this remark also did not "amount[] to improper vouching." (*Id.* at 5).

Next, the court addressed the statement that M.B. "deserves justice." (*Id.*) The court acknowledged that "it [was] well settled that 'justice for the victim' arguments are improper" under Florida law. (*Id.* (citing *Truehill v. State*, 211 So. 3d 930, 950-51 (Fla. 2017))). The court noted, however, that such remarks "do not warrant a new trial where, as here, they are singular and isolated." (*Id.*) Finally, the court turned to the statement that M.B. was in "a nightmare from which she doesn't get to wake up ever for the rest of her life." (*Id.*) The court found that this statement "was an invited response to trial counsel's earlier argument that the victim was an accomplished actress and a drama queen looking for attention, and was therefore not improper." (*Id.*) In sum, the court found that counsel was not deficient "for failing to object, ask for curative instructions, or move for a mistrial after the prosecutor's allegedly improper statements during closing argument." (*Id.* at 4).

The rejection of this claim was reasonable. The prosecutor did not engage in improper vouching when she sought to explain M.B.'s late disclosure, nor did she do so by saying, "Of course he touched her and she didn't want it." (Doc. 3 at 10). "A prosecutor's remarks are improper if they attempt to bolster the credibility of a witness based on the government's reputation or through alluding to evidence not admitted at trial." *United States v. Lopez*, 590 F.3d 1238, 1256 (11th Cir. 2009). "To determine if the government

13

improperly vouched for a witness, the court must decide whether a jury could reasonably believe that the prosecutor was indicating a personal belief in the witness'[s] credibility." *Lopez*, 590 F.3d at 1256. "This prohibition against vouching does not, however, forbid prosecutors from arguing credibility; rather, it forbids arguing credibility based on the reputation of the government office or on evidence not before the jury." *Id*.

Here, the challenged remarks did not "amount to an explicit, personal guarantee of credibility, such as assuring the jury that the prosecution would not have brought the case unless the defendant was actually guilty." *United States v. Hernandez*, 921 F.2d 1569, 1573 (11th Cir. 1991). Instead, as the postconviction court explained, both statements rested on "the evidence admitted" at trial. *United States v. Hope*, 608 F. App'x 831, 841 (11th Cir. 2015). "[A]n attorney is allowed to argue . . . credibility of witnesses or any other relevant issue so long as the argument is based on the evidence." *Miller v. State*, 926 So. 2d 1243, 1254-55 (Fla. 2006). Because the challenged remarks did not amount to improper vouching, counsel was not deficient for failing to object on that basis. *See Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) (noting that "[a] lawyer cannot be deficient for failing to raise a meritless claim").

Nor did counsel provide ineffective assistance by failing to object to the statements that M.B. "deserves justice" and was in a "nightmare from which she doesn't get to wake up ever for the rest of her life." (Doc. 3 at 10). As the postconviction court explained, the "deserves justice" remark was improper, but it "was an isolated comment and thus, it alone would not mandate reversal." *Truehill*, 211 So. 3d at 951. Competent counsel could reasonably decide to refrain from objecting to this isolated statement. As for the

14

"nightmare" remark, the postconviction court correctly found that any objection would have failed because the remark was an invited response. "A prosecutor's comments are not improper where they fall into the category of an 'invited response' by the preceding argument of defense counsel concerning the same subject." *Walls v. State*, 926 So. 2d 1156, 1166 (Fla. 2006). Here, defense counsel argued in closing that M.B.'s testimony should be discounted because she was a "drama queen" who had received "an award for acting" in a school play. (Doc. 11-2, Ex. 16, at 429). The prosecutor responded, "This is not some sort of fantasy of which [M.B.] gets to have accolades for her starring role. This is a nightmare from which she doesn't get to wake up ever for the rest of her life." (*Id.* at 440). Because this remark was an invited response to defense counsel's argument, counsel had no viable basis to object.

For all these reasons, the postconviction court reasonably concluded that counsel was not deficient for failing to object to the challenged statements. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (noting that counsel "is not ineffective for failing to raise claims reasonably considered to be without merit").

### D.   Ground Three—Admission of Child Hearsay

Mr. Jennings contends that the trial court violated his rights to due process and a fair trial by admitting "child hearsay" statements by M.B. (Doc. 1 at 21-22). The jury watched a video of M.B.'s interview with the Sarasota County Child Protection Team, during which she described Mr. Jennings's sexual abuse. (Doc. 11-2, Ex. 16, at 216-38). The jury also (1) saw M.B.'s text to her mother claiming that her "stepdad molested [her],"

15

and (2) heard that M.B. told her mother in person that Mr. Jennings had sexually abused her on two occasions. (*Id.* at 288, 294).

These out-of-court statements were admitted under an exception to the hearsay rule for statements made by a child victim. (*Id.*, Ex. 13). "For a child hearsay statement to be admissible, the statement must meet two specific reliability requirements: (1) the source of the information through which the statement was reported must show trustworthiness; and (2) the time, content, and circumstances of the statement must reflect that the statement provides sufficient safeguards of reliability." *Fitzsimmons v. State*, 309 So. 3d 261, 264 (Fla. 1st DCA 2020). After a hearing, the trial court issued a written order on the prosecution's request to admit M.B.'s hearsay statements. (Doc. 11-2, Ex. 13). As for the statements made during the Child Protection Team interview, the court found that they "possess[ed] the requisite indicia of reliability." (*Id.* at 3). Specifically, "M.B.'s statements were made in response to non-leading questions during a forensic interview conducted by a trained professional," the statements were "consistent with statements made to her mother and during her deposition," she "appear[ed] able to distinguish between reality and fantasy," and she "provided an age-appropriate description and used age-appropriate terminology when describing the incidents." (*Id.*) Moreover, although M.B. was "hesitant to discuss the events," her "statements [were] not vague, and there [was] no evidence of coaching or improper influence." (*Id.*)

The court likewise found that M.B.'s text messages and "verbal statements" to her mother "possess[ed] the requisite indicia of reliability to meet the statutory requirements." (*Id.* at 4-5). The court noted that M.B. "spontaneously sent the statements via text message

16

in response to non-leading questions," that the texts were "consistent with other statements made to her mother, and statements made during her forensic interview and deposition," and that M.B. "lack[ed] a motive to fabricate the information provided in the text message[s]." (*Id.*) As for the "verbal statements," the court found "no evidence of coaching or improper influence," noting as well that "M.B. made her statements in response to non-leading questions, her statements were not vague, and she described the incidents in an age-appropriate manner." (*Id.* at 5).

Mr. Jennings now contends that the admission of these hearsay statements caused "extreme unfairness and prejudice" and violated his "right to a fair trial." (Doc. 1 at 22). According to him, the "two-year delay in making [the] accusations rendered [M.B.'s] statements inherently unreliable," there were unidentified "discrepanc[ies]" between the statements, and their "probative value . . . was certainly outweighed by the[ir] prejudicial effect." (*Id.*) Respondent asserts that this claim is unexhausted and procedurally defaulted. (Doc. 11 at 15). The Court need not reach that issue because the claim fails on the merits. *See Dallas*, 964 F.3d at 1307 ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event.").

"[F]ederal courts will not generally review state trial courts' evidentiary determinations." *Taylor v. Sec'y, Fla. Dep't of Corr.*, 760 F.3d 1284, 1295 (11th Cir. 2014). "Indeed, in a habeas corpus action brought by a state prisoner, [the court's] authority is severely restricted in the review of state evidentiary rulings." *Id.* "Habeas relief is warranted only when the error so infused the trial with unfairness as to deny due process of law." *Id.* In other words, courts "will not grant federal habeas corpus relief based on an

17

evidentiary ruling unless the ruling affects the fundamental fairness of the trial." *Mills v. Singletary*, 161 F.3d 1273, 1289 (11th Cir. 1998).

The "category of infractions that violate 'fundamental fairness'" is "very narrow[]," and Mr. Jennings cannot show that the admission of M.B.'s hearsay statements crossed the line. *Dowling v. United States*, 493 U.S. 342, 352 (1990). As noted above, the out-of-court statements were admitted under the well-established hearsay exception for statements made by a child victim. (Doc. 11-2, Ex. 13). The trial court held a hearing, reviewed the challenged statements, and issued a detailed written order explaining why the statements were sufficiently reliable to qualify for the hearsay exception. (*Id.*; *see also id.*, Ex. 10). That order rested on reasonable factual findings, and the court thoroughly considered the factors governing the admission of child hearsay under Florida law. (*Id.*, Ex. 13). Although Mr. Jennings believes that the court erred in admitting the statements, he cannot show "fundamental unfairness to deprive him of due process and a fair trial."[1] *Moon v. Sec'y, Fla. Dep't of Corr.*, No. 8:16-cv-387-WFJ-SPF, 2020 WL 6946440, at *4-5 (M.D. Fla. Nov. 25, 2020) (no habeas relief for admission of child hearsay where, "after a full hearing on the state's notice of intent to admit child hearsay statements and Petitioner's motion *in limine*, the trial court found C.H.'s statements . . . admissible as out-of-court statements made by a child victim under 16").

---

[1] To the extent Mr. Jennings contends that the admission of M.B.'s hearsay statements violated the Confrontation Clause, that argument fails. M.B. testified at trial and was subject to cross-examination. "[I]ntroduction of out-of-court statements, even if unreliable, does not violate the confrontation clause where the declarant testifies at trial subject to full and effective cross-examination." *Carson v. Collins*, 993 F.2d 461, 464 (5th Cir. 1993); *see also Johnson v. Bett*, 349 F.3d 1030, 1037 (7th Cir. 2003) ("Even when presumptively unreliable hearsay is admitted as substantive evidence, there is no violation so long as the declarant testifies as a witness and is subject to cross-examination.").

### E. Ground Four—Introduction of Collateral-Act Evidence

Finally, Mr. Jennings maintains that the trial court violated the federal constitution by allowing the prosecution to present evidence that he committed "a similar collateral act of molestation" against C.B., the victim's older sister. (Doc. 1 at 25). According to Mr. Jennings, the collateral-act evidence "had absolutely no relevance to any issue in controversy at [the] trial, nor did the evidence have even an arguable tendency to prove a material fact." (*Id.*)

Respondent correctly contends that Mr. Jennings failed to exhaust this claim. (Doc. 11 at 16). Although he challenged the admission of the collateral-act evidence on direct appeal, Mr. Jennings failed to argue that this evidentiary ruling violated the federal constitution. (Doc. 11-2, Ex. 29, at 36-40). Instead, he couched his argument entirely in terms of state law. (*Id.*) He cited only state rules of evidence and state-court opinions, focusing in particular on Florida caselaw concerning "admission of collateral crimes evidence." (*Id.* at 37). Thus, Mr. Jennings failed to "make the state court aware that the claim[] [he] asserted present[ed] federal constitutional issues." *Jimenez*, 481 F.3d at 1342.

Mr. Jennings cannot return to state court to present his unexhausted claim in a second, untimely direct appeal. *See* Fla. R. App. P. 9.140(b)(3). As a result, this claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. And because Mr. Jennings has not shown that an exception applies to overcome the default, his claim is barred from federal habeas review.

### IV. Conclusion

Accordingly, the Court **ORDERS**:

1. Mr. Jennings's petition (Doc. 1) is **DENIED**.

2. The **CLERK** is directed to enter judgment against Mr. Jennings and to **CLOSE** this case.

3. Mr. Jennings is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Mr. Jennings must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mr. Jennings has not made the requisite showing. Because Mr. Jennings is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on September 5, 2024.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE